# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CT-00200-SCT

*W. MARK MEEKS, M. D.*

*v.*

*SHEILA FOX MILLER, PEGGY FOX WATZ AND*
*GARY MERKELL FOX, NEXT FRIENDS AND*
*SOLE BENEFICIARIES OF THE INTESTATE*
*ESTATE OF MERKELL M. FOX*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/22/2004 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | C. YORK CRAIG, JR. |
| | PAUL HOBART KIMBLE |
| | J. LAWSON HESTER |
| | JAMIE D. TRAVIS |
| ATTORNEYS FOR APPELLEES: | BARRY STUART ZIRULNIK |
| | CARLTON W. REEVES |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED; JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND RENDERED - 05/24/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     Merkell M. Fox (Fox) filed a medical malpractice lawsuit against Dr. W. Mark Meeks (Dr. Meeks) on February 28, 1995, for treatment Fox received from Dr. Meeks in late 1993.[1] Following Fox's death, the trial court substituted Fox's beneficiaries, Sheila Fox Miller, Peggy Fox Watz, and Gary Merkell Fox (collectively "Miller"), as the plaintiffs.  In 1998, the trial court granted Dr. Meeks's motion for summary judgment.  Feeling aggrieved, Miller appealed that decision to this Court.

¶2.     On appeal, this Court remanded the case to the trial court for a determination of the factual issue of whether Dr. Meeks was acting as an employee of the University of Mississippi Medical Center (UMMC) when he treated Fox.  *See Miller v. Meeks*, 762 So. 2d 302 (Miss. 2000) (*Miller I*).  The Court established five factors to be analyzed to determine whether an individual is an employee or an independent contractor.  *Miller I*, 762 So. 2d at 310.

¶3.     On remand, the trial court denied Dr. Meeks's motion for summary judgment, finding:

> [A]t all times material relevant to the rendition of professional medical services to M. Merkell Fox, W. Mark Meeks, M.D.[,] acted in the capacity of a private person engaged in [the] private practice of medicine and as an independent contractor and not in his capacity as a State employee.

¶4.     Following the judgment of the trial court on remand, the case was again appealed. This time, Dr. Meeks appealed the trial court's ruling to this Court, and the appeal was assigned to the Mississippi Court of Appeals.  The Court of Appeals examined the trial

---

[1] This Court's previous opinion stated that Fox was treated by Dr. Meeks in 1994. *See Miller v. Meeks*, 762 So. 2d 302, 303 (Miss. 2000).  However, according to the second amended complaint contained in the record, Fox was first examined by Dr. Meeks on September 22, 1993, with further visits in November and December 1993.

court's analysis of the five *Miller* factors to be considered and reversed the trial court's

denial of Dr. Meeks's summary judgment. *Meeks*, 2006 Miss. App. LEXIS 500, 8-9 (Miss.

Ct. App. 2006).

The Court of Appeals stated:

> During the period that the alleged negligence occurred, September 22, 1993, through December 13, 1993, Dr. Meeks was employed by the Board of Trustees of State Institutions of Higher Learning of the State of Mississippi (the "Board") as an Assistant Professor of Medicine at the UMMC. Dr. Meeks entered into an employment contract with UMMC in April of 1993.

> Pursuant to his contract, Dr. Meeks was required to be a member of the University of Mississippi Clinical Associates ("UMCA") and participate in the practice plan of the Division of General Internal Medicine. Dr. Meeks['s] membership in these associations was due to his status as a faculty member at UMMC.

> Dr. Meeks was paid a base salary of $77,279, and he had the right to earn 100% of additional income generated through fees up to $140,000, inclusive of the base salary. Upon reaching the threshold amount of $140,000, any additional earnings were to be split evenly between Dr. Meeks and UMMC. This additional income was generated through participation in the practice plan, where he had a clinical practice and treated patients at the UMMC Pavilion.

*Meeks*, 2006 Miss. App. LEXIS 500 at 8-9. The Court of Appeals further stated:

> Because we find that Dr. Meeks was an employee of UMMC and as a result [of being] a state employee, we hold that the trial court erred when it denied Dr. Meeks' summary judgment. As an employee of UMMC, Dr. Meeks is immune from liability.

*Meeks*, 2006 Miss. App. LEXIS 500, 25.

¶5. Finding that the trial court's denial of Dr. Meeks's motion for summary judgment to

be in error, we reverse the judgment of the trial court and render judgment in favor of Dr.

Meeks. Further, we affirm the judgment of the Court of Appeals which held that Dr. Meeks

3

was immune to Miller's lawsuit as an employee of UMMC, but we affirm the judgment for reasons other than those stated by the Court of Appeals.

## DISCUSSION

¶6.     On appeal, Dr. Meeks contends that the trial court improperly denied his motion for summary judgment. In reviewing a trial court's ruling on a motion for summary judgment, this Court conducts a de novo review and "examine[s] all the evidentiary matters before us, including admissions in pleadings, answers to interrogatories, depositions, and affidavits." *Price v. Purdue Pharma Co.,* 920 So. 2d 479, 483 (Miss. 2006) (citing *Aetna Cas. & Sur. Co. v. Berry,* 669 So. 2d 56, 70 (Miss. 1996), *overruled in part on other grounds*, *Owens v. Miss. Farm Bureau Cas. Ins. Co.*, 910 So. 2d 1065, 1074 (Miss. 2005)). "The evidence must be viewed in the light most favorable to the party against whom the motion has been made." *Price*, 920 So. 2d at 483 (citing *Berry,* 669 So. 2d at 70). "The moving party has the burden of demonstrating that no genuine issue of material facts exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact." *Howard v. City of Biloxi,* 943 So. 2d 751, 754 (Miss. App. 2006) (citing *City of Jackson v. Sutton*, 797 So. 2d 977, 979 (Miss. 2001)).

¶7.     "Issues of fact sufficient to require a denial of a motion for summary judgment are obviously present where one party swears to one version of the matter in issue and another party takes the opposite position." *Price*, 920 So. 2d at 483 (citing *American Legion Ladnier Post No. 42 v. Ocean Springs,* 562 So. 2d 103, 106 (Miss. 1990)). "If any triable issues of fact exist, the trial court's decision to grant summary judgment will be reversed."

4

*Price*, 920 So. 2d at 484. Otherwise, the decision is affirmed. *Id.* at 483 (citing *Miller v. Meeks*, 762 So. 2d 302, 304 (Miss. 2000)).

¶8. In *Miller I*, this Court adopted a five-factor test to determine whether a physician is an employee of the state and should be protected by sovereign immunity. Here, there is no need for this Court to analyze the five factors. In this appeal, Miller acknowledges that Dr. Meeks had an employment contract and was employed by UMMC as a professor. As such, we need only address whether Dr. Meeks acted within the scope and course of his employment at UMMC when he treated Fox. "Course of employment" is defined as "[e]vents that occur or circumstances that exist as part of one's employment; esp., the time during which an employee furthers an employer's goals through employer-mandated directives." *Black's Law Dictionary* 356 (7th ed. 1999). "Scope of employment" is defined as "[t]he range of reasonable and foreseeable activities that an employee engages in while carrying out the employer's business." *Id*. at 1348.

¶9. In *Children's Med. Group, P.A. v. Phillips*, 940 So. 2d 931, 935 (Miss. 2006), the Court stated:

> Under Section 228 of the Restatement (Second) of Agency:
>
> > (1) Conduct of a servant is within the scope of employment if, but only if:
> > (a) it is of the kind he is employed to perform;
> > (b) it occurs substantially within the authorized time and space limits;
> > (c) it is actuated, at least in part, by a purpose to serve the master, and
> > (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228 (1958); *see also* **Commercial Bank v. Hearn**, 923 So. 2d 202, 208 (Miss. 2006).  If an employee "deviates or departs from his work to accomplish some purpose of his own not connected with his employment - goes on a 'frolic of his own' - the relation of master and servant is thereby temporarily suspended," and the employer is not vicariously liable. **Seedkem S., Inc. v. Lee**, 391 So. 2d 990, 995 (Miss. 1980) (citations omitted). *See also* **Mabus v. St. James Episcopal Church**, 884 So. 2d 747, 756 (Miss. 2004) (as a matter of law, church not vicariously liable for priest's surreptitious taping of counseling session with parishioner);**Gulledge v. Shaw**, 880 So. 2d 288, 295 (Miss. 2004) (as a matter of law, bank not vicariously liable for employee's knowing notarization of forged signature); **Adams v. Cinemark USA, Inc.**, 831 So. 2d 1156, 1159 (Miss. 2002)  (as a matter of law, theater not vicariously liable for assault on movie patron).

¶10.    We do not need to remand this case to the trial court to determine whether Dr. Meeks was acting within a state-protected environment or practice when he treated Fox.  The contract of employment signed by Dr. Meeks with the Board of Trustees of State Institutions of Higher Learning of the State of Mississippi allowed Dr. Meeks to see patients subject to the terms of the contract as a condition of his employment by the Board of Trustees.  Nothing in the employment contract provides that Dr. Meeks must have resident physicians present at all times when patients are treated.  Further, Dr. Meeks's testimony provided that most of the time, residents are not present when patients are treated at the Pavilions, where Fox was treated by Dr. Meeks.  No evidence was presented which disputes Dr. Meeks's assertion.  No statute or caselaw requires that a doctor must be "teaching" at the precise moment that treatment is provided to a patient or have residents present at all times in order to satisfy the

employee status of UMMC.[2]  By his employment contract, Dr. Meeks is an employee of UMMC.

¶11.   The employment contract makes clear that all income generated from such patients must be reported quarterly.  The contract does not exclude treating private-pay or insured patients.  The contract states in pertinent part:

> 1.   In accordance with policies approved by the Board of Trustees of State Institutions of Higher Learning, the party of the second part in addition to his/her annual contracted salary will be permitted to earn additional income from medical practice subject to the following limitations:
>
>> a)   The party of the second part [Dr. Meeks] shall retain 100% of earnings from medical practice up to a total income of $140,000, effective July 1, 1992.
>>
>> b)   Income in excess of $140,000 will be divided 50% to the party of the second part [Dr. Meeks] and 50% to the University of Mississippi Medical Center (UMMC).  Of the amount allocated to the Medical Center, 60% shall be for the use within the department of the party of the second part [Dr. Meeks]. . . .

---

[2]  In Miss. Code Ann. § 37-115-25 (Rev. 2001), the Mississippi Legislature provided for the operation of UMMC, stating:

> There shall be built, equipped and operated as a part of the medical school, a teaching hospital of the size of not less than three hundred fifty bed capacity, together with all ancillary buildings and physical facilities needful or proper for the establishment, operation and maintenance of such a hospital as a part of a fully accredited four-year medical school, including clinical and out patient services and all types of services deemed to be necessary or desirable as a part of the functioning of such a teaching hospital.  Said teaching hospital shall be known as the University Hospital.  There shall also be acquired and installed all needed equipment and supplies for the proper operation and maintenance of such medical school and hospital and other facilities for the purposes aforesaid.  There shall be employed all needed personnel and services to operate said medical school and hospital and other facilities.

3. The party of the second part [Dr. Meeks] agrees to his/her pro rata share of expenses in the private patient association (University of Mississippi Clinical Associates). This payment shall be based upon gross medical practice earnings from all patient care related income at the Medical Center. Gross medical practice earnings shall be reported quarterly to the Business Office of the association (University of Mississippi Clinical Associates).

¶12. Article III of the constitution and bylaws of the University of Mississippi Clinical Associates (UMCA) states that the members of the Association "consist of **all geographic full-time physicians**, dentists, and other clinicians employed by the University of Mississippi Medical Center. . . ." (Emphasis added). The bylaws further state: "[m]embership in this Association as defined in Article III, Section I, **shall be a condition of employment by the Medical Center** under the authority granted by the Board of Trustees, Institutions of Higher Learning and executed by the Director of the University of Mississippi Medical Center." (Emphasis added).

¶13. Article II of the constitution and bylaws of the UMCA provides the following objectives of the Association:

Section 1. The Association shall maintain and supervise an outpatient clinic area or areas for the private practice of medicine.

Section 2. The Association shall strive to insure that its members have a voice in determination of policy concerning the private practice of medicine and the disposition of earnings therefrom.

Section 3. The Association shall promote excellence in quality and efficiency of patient care within the development of special services and facilities which will be a valuable resource to the community.

Section 4. The Association shall support and encourage the teaching programs of medical and paramedical personnel within the University Medical Center.

8

¶14. The fact that a resident was not present when Fox was seen as a patient and the fact that Medicare and Fox's supplemental insurance policy paid for Dr. Meeks's services does not alter Dr. Meeks's contractual status. This Court has never required such a broad and overreaching requirement.

¶15. In *Watts*, 828 So. 2d 785, 792-94, this Court held that the fact that UMMC administers medical practice plans which allow the doctors to see outpatients and increase their income does not cause the doctors' status as employees to change. Key to the arrangement, UMMC maintains control over the doctors' income through their contractual obligations to UMMC and the Board of Trustees of the State Institutions of Higher Learning. In *Watts*, this Court linked the need for this arrangement to generate additional income with the possibility of hiring and retaining skilled physicians to teach at UMMC. *Watts*, 828 So. 2d at 793.

¶16. This Court, in *Mozingo v. Scharf*, 828 So. 2d 1246, 1254-55 (Miss. 2002), specifically held that belonging to a medical practice plan, like the UMCA, does not render a doctor an independent contractor rather than an employee of UMMC. The Court reasoned as follows:

> Each department at UMMC, with the exception of the Ophthalmology Department, has established a formal medical practice plan. The trial court found that UAS [University Anesthesia Services, PLLC] was a governmental entity within the definitions of both "political subdivision" and "state." Miss. Code Ann. § 11-46-1 (i) & (j). "A 'political subdivision' means any body politic or body corporate . . . responsible for governmental activities." *Id*. § 11-46-1(i). The Mozingos argue that UAS is not a governmental entity in that UAS does not carry out any governmental activities and that UAS's sole function is to provide private medical services to patients at UMMC. However, providing patients with medical services is a statutorily established activity that UMMC has been mandated to provide by the Mississippi Legislature. UMMC is to provide "clinical and outpatient services and all types of services deemed to be necessary or desirable as a part of the

9

functioning of such teaching hospital." Miss. Code Ann. § 37-115-25 (2001). At least half of these services are required to go to indigent persons or Medicaid recipients. *Id*. § 37-115-27. By providing clinical patient services, UAS is carrying out state governmental activities on behalf of UMMC. Therefore, UAS falls squarely within the definition of a political subdivision.

The trial court also found that UAS fell within the definition of "state." "State means the State of Mississippi and any office, department, agency, division, bureau, commission, board, institution, hospital, college, university, airport authority, or any other instrumentality thereof. . . ." Miss. Code Ann. § 11-46-1(j). UAS falls within the definition of "state" because it is an instrumentality of UMMC. An instrumentality is not specifically defined in the above code section, however, the Legislature was using "instrumentality" as an inclusive term so as not to limit the means by which the state could carry out its governmental functions. While other terms in the above code section would apply to UAS (i.e., department, office, division), "instrumentality" seems to be the most appropriate term to describe UAS.

UAS was created to provide anesthesia services to patients at UMMC. As already noted, UMMC is a teaching hospital which functions to carry out the goal of the Legislature - to provide low cost or no cost health services to indigent persons or persons on Medicaid who live in the state. UAS is also staffed with UMMC faculty members who provide another important function to the State of Mississippi - to prepare future physicians to practice in the State. Furthermore, UAS is bound by UMMC guidelines. Actions with regard to physicians at UMMC are limited by the rights of the physicians as state employees at UMMC. *UMMC has numerous divisions and practice plans under its umbrella consisting of numerous organized groups of physicians with medical school faculty appointments.* Twelve of these clinical departments, including the Department of Anesthesiology, formed the plan at issue here. *However, these physicians cannot moonlight on other jobs in private practice, but rather are limited to providing services at UMMC. In fact, every doctor providing clinical patient services at UMMC is required by the state to belong to the practice plan.* Practically every case this Court has considered regarding the subject matter of immunity under the MTCA has involved one or more physician who is both a member of a practice plan and UMMC as required. Thus, UAS was created because of a direct edict from the state agency charged with the management of UMMC. *We find that UAS was simply an entity created to facilitate the billing and collection of physician fees generated by state employees. It is not a private entity. The trial court did not err when it concluded that UAS was indeed a governmental entity and as such, the trial court is affirmed on this issue.*

10

*Mozingo*, 828 So. 2d at 1254-55 (emphasis added).

¶17.    Dr. Meeks's employment contract provides that UMMC maintained complete control over Dr. Meeks's earnings.  Further, UMMC had a financial interest in Dr. Meeks's earnings, retaining a contractual percentage of Dr. Meeks's earnings.  The contract provides in pertinent part:

> 1. b)    Income in excess of $140,000 will be divided 50% to the party of the second part [Dr. Meeks] and 50% to the University of Mississippi Medical Center (UMMC).  Of the amount allocated to the Medical Center, 60% shall be for use within the department of the party of the second party [Dr. Meeks].
>
> Income shall be defined as gross calendar year earnings from UMMC and the Department of Veterans Affairs Medical Center up to $140,000 plus medical practice earnings. . . .  Such earnings shall include all patient care related income at the Medical Center, Department of Veterans Affairs Medical Center, or elsewhere. . . .

¶18.    Importantly, this Court has held that the fact that physicians employed by UMMC generate additional income does not alter their status as employees, and this arrangement makes it possible to hire and retain skilled doctors to serve as instructors at UMMC.  *Watts*, 828 So. 2d at 793.  While lengthy, it is beneficial to examine what the Court held:

> Given the sufficient information in the record before this Court concerning details of the UMMC departmental practice plans in general, and the UAS plan specifically, from which to determine that receiving income from a UMMC medical practice plan does not make a physician an independent contractor, we today so hold.
>
> It should be remembered that the MTCA is a legislative, not judicial creation.  "The function of creating a public policy is primarily one to be exercised by the Legislature and not by the courts."  *Miss. Baptist Hosp. v. Holmes*, 214 Miss. 906, 931, 55 So. 2d 142, 152 (1951).  Moreover, because the Legislature "controls the purse," it is the Legislature that must determine the salaries of the faculty of our state medical school.  The Legislature created the state teaching hospital in order to train physicians for this state.  The statute

11

mandates that UMMC shall establish "clinical and out patient services and all types of services deemed to be necessary or desirable as a part of the functioning of such a teaching hospital." Miss. Code Ann. § 37-115-25 (2001). UMMC is mandated to take all patients, whether they are able to pay or not. The Board of Trustees, which has authority over this state's teaching hospital, has mandated an employment plan for its faculty which includes a base salary, supplemented by money received at the teaching hospital for clinical and outpatient services. This supplemental income is administered by UMMC's medical practice plans.

Under the contract Dr. Tsang signed with the State of Mississippi, he must belong to one of these medical practice plans created and administered by the State, and can work only at UMMC. Further, only faculty at UMMC can belong to these medical practice plans.

* * *

Watts's characterization of UAS as a private corporation solely for the benefit of the physicians, so that they can hide behind State immunity in their private practice, is disingenuous. The State created UAS, not primarily for the benefit of the faculty-physicians, but instead, for its own benefit. The State has a compelling interest in training doctors in this state and caring for indigent patients. The State wants to attract the best instructors for its teaching hospital. Without subsidizing the income of its faculty through these medical practice plans, it can not do so. When the faculty-physician is hired, the compensation arrangement is explained. He or she receives a base salary provided from the State coffers, which is then supplemented by patient care revenues collected at the teaching hospital. The faculty-physicians did not devise this creative salary system, and they have no choice whether or not they want to participate in it. Watts's argument that they have a choice not to participate in one of plans is specious at best. It would be similar to arguing that any employee has a choice whether or not to accept part of, instead of all of his or her salary. Without the money channeled through UAS, Dr. Tsang would not be receiving the full salary and benefits he bargained for as a State employee.

* * *

We find as a matter of law that Dr. Tsang cannot lose his status as a State employee, and the immunity that status affords, merely by receiving a portion of his compensation through UAS. UAS is nothing more than the State's vehicle for providing and billing for patient care at its state hospital and supplementing the income of its faculty-physicians. If Dr. Tsang lost his faculty appointment, he would automatically lose his hospital privileges, and his employment with UAS would automatically terminate.

12

That said, we are not holding that all medical practice groups are per se instrumentalities of the State. However, where as here the medical practice group was created by UMMC, and is overseen by UMMC, and the purpose is to supplement the income of its faculty; when the day-to-day oversight is left to the department chair, subject to limited oversight by the vice chancellor, and its membership is composed solely of full-time UMMC faculty-physicians; where the faculty-physicians can only practice at UMMC approved sites, and the money is distributed on a point system based on factors other than mere patient service, we must conclude that the medical practice group is a State entity.

We are also not holding that receiving compensation from a medical practice plan makes one an employee of the State. Physicians who engage in private practice, separate from UMMC, cannot acquire State immunity for their private practice by merely doing work at UMMC or receiving payment from one of its medical practice plans.

*Watts*, 828 So. 2d at 792-94.

¶19.  Further, this Court in ***Mozingo***, 828 So. 2d at 1254-55, held that the physician's participation in a practice plan does not render the physician an independent contractor where the physician was required by the State to belong to the practice plan. Here, the bylaws of the UMCA which apply to Dr. Meeks state that "[m]embership in this Association . . . shall be a condition of employment by the Medical Center under the authority granted by the Board of Trustees, Institutions of Higher Learning and executed by the Director of the University of Mississippi Medical Center." The UMMC shared in the net proceeds of the practice by contractually creating a financial interest in the practice and Dr. Meeks's earnings.

¶20.  Dr. Meeks was contractually required as stated above to periodically report his earnings and expenses to the Assistant Vice Chancellor of Business Affairs of the Medical Center. The report specifically was required to contain a detailed listing of Dr. Meeks's

13

income and deductions as well as annuities and deferred compensation plans. The contract provided that Dr. Meeks was subject to audit by the Vice Chancellor for Health Affairs. As such, UMMC exercised considerable control over Dr. Meeks's total income.

¶21. In an affidavit from Dr. William C. Nicholas, Director of the Division of Internal Medicine, he stated that he determined how payments were allotted from the Division of General Internal Medicine's practice plans. Dr. Nicholas stated that the Division of General Internal Medicine practice plan was subject to the supervision of the Department of Medicine Chair and further oversight from the Vice Chancellor.

¶22. Based on the findings discussed above, we hold that Dr. Meeks was acting in the course and scope of his employment at UMMC when he treated Fox. Accordingly, the trial court erred by denying Dr. Meeks's motion for summary judgment.

## CONCLUSION

¶23. We affirm the judgment of the Court of Appeals which reversed the judgment of the Circuit Court of the First Judicial District of Hinds County, Mississippi, and rendered judgment in favor of Dr. Meeks for the reasons stated herein. We reverse the judgment of the First Judicial District of the Circuit Court of Hinds County and render judgment by this Court in favor of Dr. Meeks.

¶24. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY, MISSISSIPPI, IS REVERSED AND JUDGMENT RENDERED.**

**SMITH, C.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, P.J. GRAVES AND LAMAR, JJ., NOT PARTICIPATING.**

14

**DIAZ, PRESIDING JUSTICE, DISSENTING:**

¶25.    Because the majority abandons the test set out in *Miller I* and finds that Dr. Meeks cannot be an independent contractor under any set of circumstances, I must respectfully dissent.

### I. *Miller I* Should not be Abandoned.

¶26.    While it is true that Dr. Meeks was employed by UMMC as a professor, "[o]ur law recognizes that a person may be an independent contractor as to certain work and a mere agent as to other work for the same employer." *Kight v. Sheppard Bldg. Supply, Inc.*, 537 So. 2d 1355, 1359 (Miss. 1989) (citing *Carroll v. Laughlin*, 220 Miss. 535, 71 So. 2d 461 (1954); *Mills v. Jones*, 213 Miss. 680, 56 So. 2d 488 (1952)).  Thus, the question presented to the Court is whether Dr. Meeks was acting as an independent contractor at the time of the alleged negligence.

¶27.    The majority, however, holds that we should no longer look to whether Dr. Meeks was acting as an independent contractor, but whether he was "acting within the scope and course of his employment."  This presupposes that Dr. Meeks was acting as an employee, answering the very question that is before this Court and placing "the cart before the horse."  Before we can determine whether Dr. Meeks was acting within the scope and course of his employment, we must first determine whether an employer-employee relationship existed in the first place.

¶28.    By removing the independent contractor exception, the majority violates well established rules of tort law and clear legislative intent.  This Court has held, "[i]t is well settled that one who contracts with an independent contractor to perform certain work or service which is not illegal, dangerous or harmful, is not liable for torts committed by him."

15

*Hester v. Bandy*, 627 So. 2d 833, 841 (Miss. 1993) (*citing **Blackmon v. Payne***, 510 So.2d

483 (Miss. 1987); ***Mississippi Power Co. v. Brooks***, 309 So. 2d 863 (Miss. 1975)).  This rule

that a principle is generally not liable for the actions of an independent contractor is reflected

in the governing statute.

> "Employee" means any officer, employee or servant of the State of Mississippi or a political subdivision of the state, included elected or appointed officials and persons acting on behalf of the state or a political subdivision in any official capacity, temporarily or permanently, in the service of the state or a political subdivision whether with or without compensation.  *The term "employee" shall not mean a person or other legal entity while acting in the capacity of an independent contractor* under contract of the state or a political subdivision . . ."

Miss Code Ann § 11-46-1(f) (Supp. 1999) (emphasis supplied).  *See also* Miss. Att'y Gen.

Op. No. 96-0137 (March 8, 1996) ("The definition, in Section 11-46-1(f), does exclude from

the protection of the Act those persons 'acting on behalf of the state' who are 'independent

contractors.'").[3]  The opinion never mentions this statute.

### II. Dr. Meeks was Acting as an Independent Contractor.

¶29.    In ***Miller I***, Justice Mills articulated for the Court five factors to be used in

determining whether Dr. Meeks was acting an independent contractor: (1) the nature of the

function performed by the physician; (2) the extent of the state's interest and involvement in

---

[3]The Legislature has amended this section in 2002 to include "any physician, dentist or other health care practitioner employed by the University of Mississippi Medical Center (UMMC) and its departmental practice plans who is a faculty member and provides health care services only for patients at UMMC or its affiliated practice sites."  Miss. Code Ann. § 11-46-1(f) (Rev. 2002).  Any actions brought after 2002 will be governed  by the amendment, and doctors practicing at the Pavilion will be considered employees. Therefore, it makes little sense to abandon a well-accepted test at this point in time.

16

the function; (3) the degree of control and direction exercised by the state over the physician; (4) whether the act complained of involved the use of judgment and discretion; and whether the physician receives compensation, either directly or indirectly, from the patient for professional services rendered. 762 So. 2d at 310. Presiding Justices Pittman and Banks and Justices Smith, Waller, Cobb and myself concurred. *Id.* Justice McRae concurred in part and dissented in part and Chief Justice Prather did not participate in the opinion. *Id.*[4]

¶30.    At the time of the alleged negligence, Dr. Meeks was a professor at UMMC, but was allowed to earn additional income as a member of the University of Mississippi Clinical Associates (UMCA).   The UMCA is separate from UMMC and its membership is limited to physicians, dentists and clinicians employed by UMMC.  According to the by-laws, "The Association shall have final authority over all policies and procedures, subject to limitations imposed by the administration of the University Medical Center, University of Mississippi,

---

[4]Since *Miller I*, this Court has examined this five-part test in eleven cases. *Johnson v. Chatelain*, 943 So. 2d 684 (Miss. 2006); *Davis v. Hoss*, 869 So. 2d 397 (Miss. 2004); *Corey v. Skelton*, 834 So. 2d 681 (Miss. 2003); *Mozingo v. Scharf*, 828 So. 2d 1246 (Miss. 2002); *Watts v. Tsang*, 828 So. 2d 785 (Miss. 2002); *Clayton v. Harkey*, 826 So. 2d 1283 (Miss. 2002); *Bennett v. Madakasira*, 821 So. 2d 794 (Miss. 2002); *Conley v. Warren*, 797 So. 2d 881 (Miss. 2001); *Carter v. Harkey*, 774 So. 2d 392 (Miss. 2000); *Smith v. Braden*, 765 So. 2d 546 (Miss. 2000); *Sullivan v. Washington*, 768 So. 2d 881 (Miss. 2000).  In five cases, this Court found that the physician was acting as an employee of UMMC and therefore was afforded the protections of the MTCA.  *Corey*, 834 So. 2d 681 (affirming summary judgment in favor of physician); *Mozingo*, 828 So. 2d 1246 (same); *Watts*, 828 So. 2d 785 (same); *Clayton*, 826 So. 2d 1283 (same); *Sullivan*, 768 So. 2d 881 (reversing denial of summary judgment). In the remaining six cases, we reversed summary judgments which held that the physician was acting as an employee of UMMC and remanded these cases for a determination of the factual issues.  *Johnson*, 943 So. 2d 684; *Davis*, 869 So. 2d 397; *Bennett*, 821 So. 2d 794; *Conley*, 797 So. 2d 881; *Carter*, 774 So. 2d 392; *Smith*, 765 So. 2d 546.

17

and Board of Trustees, Institutions of Higher learning." (Article X Section 1). Additionally, the UMCA by-laws consistently refer to the administration of "private outpatient clinics.

¶31. Under his employment contract, Dr. Meeks earned a base salary of $77,279 with the right to earn 100% of additional income up to $140,000, and 50% of any additional fees thereafter. This additional money was earned at the "UMMC Pavilion," an outpatient clinic located on the campus, referred to as a "private clinic" on its appointment card. Dr. Meeks was required to submit a "Private Practice Income Report" once a year to UMMC. In 1993 and 1994, Dr. Meeks paid a "self-employment tax" on this partnership income. His base salary from UMMC was reported as "wages, tips, salaries etc."

¶32. In our previous opinion, we stated that "UMMC generated the bills and collected the payment for professional services rendered by Dr. Meeks during his time with the Association." *Miller I*, 762 So. 2d at 306. In support of this finding, we relied on the by-laws of the UMCA. However, UMMC's name does not appear on Fox's medical bills. Rather, the name on the bills is the Division of Internal Medicine, which at the time of the alleged malpractice was a partnership between Dr. Meeks and another doctor. The partnership agreement specifically states, "the Partners desire to form a partnership for the purposes of providing (1) medical services to patients in the *private practice* of internal medicine at the University Hospital, and (2) *a billing and collection service* for the Partnership and others." (Emphasis supplied). While Dr. Meeks asserted in his deposition that the Division of Internal Medicine was a division of UMMC, the plain language of the agreement reveals an intent to form a partnership solely for providing *private* services.

18

¶33. The Court of Appeals found that all five *Miller* factors weighed in favor of Dr. Meeks's status as an employee of UMMC. *Meeks v. Miller*, 2006 Miss. App. LEXIS 500 (Miss. Ct. App. 2006). For the following reasons, I find that the Court of Appeals erred and that Dr. Meeks was acting as an independent contractor.

**(1) The Nature of the Function Performed by the Employee.**

¶34. In analyzing the nature of the employee's function in previous cases, we have found three factors helpful: (1) whether the doctor was acting in a teaching capacity at the time of treatment; (2) whether the doctor had a private relationship with the patient; and (3) whether the doctor was providing care to an indigent patient. *See Sullivan*, 768 So. 2d at 884-85; *Clayton*, 826 So. 2d at 1285; *Watts*, 828 So. 2d at 798; *Mozingo*, 828 So. 2d at 1252; *Corey*, 834 So. 2d at 685; *Johnson*, 943 So. 2d at 687. If the doctor is teaching, without a private physician-patient relationship, and treating an indigent patient, these facts weigh in favor of the doctor's status as an employee.

¶35. In this case, it is undisputed that neither residents nor medical students were present during Fox's visits. Additionally, Fox sought out Dr. Meeks after he was referred by a neighbor. Because Fox was not assigned to Dr. Meeks, there was a private physician-patient relationship. Finally, Fox's daughter stated that his medical bills were paid by a combination of Medicare and other private supplemental heath insurance. Therefore, Fox was a "private-pay" patient, and Dr. Meeks's deposition testimony supports a finding that Fox was not an indigent patient:

> Dr. Meeks:  Actually, the patients have to have some sort of insurance to be seen [at the Pavilion] is my understanding. So, you know, in

19

> that sense they recommend if patients don't have insurance that they go to the Medical Mall to be seen.

> Q: So, there again, if they require them to have insurance to be seen by you, that means that they will be charged and be – be paying for your services and not be provided free services such as provided by UMC. Correct?

> Dr. Meeks: That's correct.

¶36. The Court of Appeals dismissed these factors and found that the nature of the function performed weighed in favor of finding that Dr. Meeks was an employee. *Meeks*, 2006 Miss. App. LEXIS 500 at ¶ 19. This finding is out of step with our previous cases, and this factor weighs in favor of the trial court's finding that Dr. Meeks was an independent contractor. *See Johnson*, 943 So. 2d at 687; *Sullivan*, 768 So. 2d at 884-85; *Clayton*, 826 So. 2d at 1285; *Watts*, 828 So. 2d at 798; *Mozingo*, 828 So. 2d at 1252; *Corey*, 834 So. 2d at 685.

**(2) The Extent of the State's Interest and Involvement in the Function.**

¶37. When examining this factor, we again look to whether the doctor was teaching or supervising medical students or residents and whether the doctor was treating an indigent patient. We have consistently held that "[t]he State has a strong interest in maintaining a practical and educational environment for residents and supervising physicians in its state hospitals, meeting the needs of both the physicians and the patients." *Johnson*, 943 So. 2d at 687 (*citing Sullivan*, 768 So. 2d at 885). Additionally, "UMMC is fulfilling its operational purpose under Miss. Code Ann. § 37-115-31 (1996) by providing care to [patients] regardless of [their] ability to pay." *Id*. *See also Clayton*, 826 So. 2d at 1285-86; *Mozingo*, 828 So. 2d at 1252; *Corey*, 834 So. 2d at 685.

20

¶38. The Court of Appeals found that because the State has an interest in hiring and retaining highly skilled physicians, this second factor weighed in favor of determining that Dr. Meeks was an employee. *Meeks*, 2006 Miss. App. LEXIS 500 at ¶ 22-23. However, this again ignores our precedent. In the present case, Dr. Meeks was neither teaching nor supervising any residents, and Fox was not an indigent patient. We have previously held "[t]he State does not have any interest in one of its faculty members treating a 'private patient.'" *Bennett*, 821 So. 2d at 800. Therefore, this factor weighs in favor of finding that Dr. Meeks was acting as an independent contractor.

**(3) The Degree of Control and Direction Exercised by the State Over the Physician.**

¶39. The Court of Appeals found that "[w]hile being contractually required to maintain membership with the UMCA, Dr. Meeks was prohibited from practicing medicine outside his employment at UMMC. Further, he could only admit patients to UMMC and no other hospital." *Meeks*, 2006 Miss. App. LEXIS 500 at ¶ 25. However, his UMMC employment contract does not contain these restrictions. The contract simply states that he must report additional income from "all patient care related income at the Medical Center, Department of Veterans Affairs Medical Center, or *elsewhere*." (Emphasis supplied). It was his partnership agreement, the Division of Internal Medicine, and not UMMC or UMCA, that restricted his practice to UMMC. As discussed above, the record is unclear whether the Division of Internal Medicine was a division of UMMC or a "private" partnership as stated in its partnership agreement.

21

¶40. In our previous opinion, we found that "UMMC exercises considerable control over the treatment of patients at the clinic." **Miller I**, 762 So. 2d at 306. However, the record shows only that the clinics were subject to UMMC regulations, despite Dr. Meeks's claims that UMMC controlled the entire relationship. While being subject to regulations is evidence of some control, this does not support our previous conclusion that "UMMC exercise[d] *considerable* control." **Id.** (Emphasis supplied).

¶41. On the other hand, plaintiffs allege that at all times Dr. Meeks held himself out to be a private practitioner. UMMC did not assign Fox to Dr. Meeks, and at no time was Dr. Meeks teaching or supervising residents or medical students. Indeed, his employment contract, the UMCA bylaws, and the Division of Internal Medicine partnership agreement all refer to the clinic as "private practice."

¶42. The majority asserts that Dr. Meeks was part of a "medical practice plan" and relies on our opinion in **Mozingo**. **Mozingo** held that where the defendant was part of a "medical practice plan," he was considered a member of a "political subdivision" for purposes of Miss. Code Ann. § 11-46-1(I) (Rev. 2002). 828 So. 2d at 1254-55. However, at the time in question, there were no such well-defined "practice plans" such as the UAS. Unlike the UAS, Dr. Meeks was in a private partnership. **Id.** at 1255. Accordingly, this factor weighs in favor of the trial court's finding that Dr. Meeks was acting as an independent contractor.

**(4) Whether the Act Complained of Involved the Use of Judgment and Discretion.**

¶43. This fourth factor is practically the same in every case. In **Sullivan** we noted that "[w]hile this is a consideration, it is not determinative. Virtually every act performed by a

22

person involves the exercise of some discretion. . . . This is especially true of physicians who are bound to exercise their judgment without interference from others." 768 So. 2d at 885; *see also* **Johnson**, 943 So. 2d at 688. Accordingly, I would eliminate this factor as it has not proved to be helpful when determining physician employment status.

**(5) Whether the Physician Receives Compensation, Either Directly or Indirectly, from the Patient for Professional Services Rendered.**

¶44. This final factor often turns on whether the patient was indigent, whether UMMC directly billed the patient, or whether the doctor was placed on a set salary. **Sullivan**, 768 So. 2d at 885-86; **Mozingo**, 828 So. 2d 1253; **Smith**, 765 So. 2d at 550; **Corey**, 834 So. 2d at 685. As previously discussed, Fox had private insurance. He was billed by the Division of Internal Medicine, Dr. Meeks's private partnership. Finally, the money received from his practice at the clinic was money he earned above his base salary. Thus, the final factor weighs in favor of finding Dr. Meeks an independent contractor.

## Conclusion

¶45. For the foregoing reasons, I would reverse the Court of Appeals decision and reinstate the circuit court's denial of summary judgment.

**WALLER, P.J., JOINS THIS OPINION.**