# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-00448-SCT

*JALA CLAYTON*

*v.*

*H. LOUIS HARKEY, III, M.D.*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/26/2001 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOSEPH S. GATLIN, III |
| ATTORNEYS FOR APPELLEE: | JOHN COLLINSWORTH McCANTS, III |
| | STEPHEN P. KRUGER |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 09/26/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/17/2002 |

**BEFORE SMITH, P.J., CARLSON AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1. In this medical malpractice action filed against H. Louis Harkey, III, M.D., a staff neurosurgeon at the University of Mississippi Medical Center, the trial court granted summary judgment in favor of Dr. Harkey and dismissed him from the suit as immune from liability based on his status as a state employee pursuant to the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. § 11-46-7(2) (2002). The plaintiff, Jala Clayton, claims that Dr. Harkey was acting as an independent contractor and should not have been dismissed from the suit. We disagree and affirm.

## FACTS

¶2. Jala Clayton was born with a rare form of dwarfism that caused minor back problems. Clayton discussed her back problems with several physicians including Dr. H. Louis Harkey, III, a neurosurgeon at the University of Mississippi Medical Center ("UMMC"). On or about May 5, 1998, Clayton was admitted to UMMC to undergo surgery on her back. Dr. Donnie Tyler, a neurosurgical resident, dictated and performed the initial history and physical on Clayton. Dr. Tyler also signed the consent form presented to Clayton prior to the subject surgery, and he wrote the majority of the progress notes with respect to

Clayton and her treatment up to and including the surgical procedure. Nevertheless, it was Dr. Harkey who actually performed the surgical procedure while Dr. Tyler observed. Dr. Harkey performed a thoracic diskectomy, but the procedure was performed on the wrong disc.

¶3. Clayton filed suit against Dr. Harkey, Dr. Tyler, UMMC, and others alleging damages to her spine, vertebrae, back, discs and other vital body parts as a direct and proximate result of the negligence by Dr. Harkey and others. Both Clayton and Dr. Harkey filed motions for summary judgment based on Dr. Harkey's status at UMMC. After consideration of the motions and oral and written argument, the trial court denied Clayton's motion and granted summary judgment for Dr. Harkey and dismissed him as an individual defendant from the suit on the basis of immunity applicable to employees of the State of Mississippi under Miss. Code Ann. § 11-46-7(2). The judgment was certified as final in accordance with Miss. R. Civ. P. 54(b).

¶4. It is from that judgment that Clayton appeals, arguing that Dr. Harkey was acting as an independent contractor and should not have been dismissed from the suit.

## STANDARD OF REVIEW

¶5. This Court employs a de novo standard when reviewing a trial court's grant of summary judgment. *Carter v. Harkey*, 774 So.2d 392, 394 (Miss. 2000). For a summary judgment motion to be granted, there must exist no genuine issues of material fact, and the moving party must be entitled to judgment as a matter of law. Miss. R. Civ. P. 56(c). If any triable issues of fact exist, the trial court's decision to grant summary judgment will be reversed. *Miller v. Meeks*, 762 So.2d 302, 304 (Miss. 2000).

## DISCUSSION

¶6. The Mississippi Tort Claims Act ("MTCA") provides that no state employee "shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Miss. Code Ann. §11-46-7(2). The MTCA defines "employee" as "any officer, employee or servant of the State of Mississippi or a political subdivision of the state" but specifically excludes from that definition an individual "acting in the capacity of an independent contractor." *Id*. § 11-46-1(f). Under the MTCA, there exists "a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment." *Id.* §§ 11-46-5(3) & -7(7). ¶7. To determine whether a faculty physician at UMMC is an employee or an independent contractor for purposes of immunity under the MTCA, the Court considers the factors adopted in *Miller v. Meeks*, 762 So.2d 302, 310 (Miss. 2000) which are: (1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; (4) whether the act complained of involved the use of judgment and discretion; and (5) whether the physician received compensation, either directly or indirectly, from the patient for professional services rendered.

### The Nature of the Function Performed by Dr. Harkey

¶8. In the case sub judice, Dr. Harkey was in the operating room with a neurosurgery resident at the time of the alleged negligence. As expressed by the trial judge, Dr. Harkey was "participating in the educational process of a neurosurgical resident and 'serving a public function by providing care for a Medicaid patient. The nature of this function was one of continued education and furtherance of [Dr.Tyler's] career path of

becoming a physician.'" _**Sullivan v. Washington**_, 768 So.2d 881, 885 (Miss. 2000) (holding that a faculty-physician who merely supervised an operation performed by a surgical resident was protected under the MTCA). However, unlike the situation in _**Sullivan**_, Dr. Harkey performed the surgical procedure himself. Clayton argues that this fact "weighs heavily in favor of finding that Harkey was acting as an independent contractor." Aside from claiming that this case is the "polar opposite" from _**Sullivan**_, Clayton offers no authority to support her argument.

¶9. The mere fact that Dr. Harkey, as opposed to a surgical resident, performed the operation does not in and of itself suggest he was acting as an independent contractor. The education of the surgical resident during the operating procedure is not significantly different from a classroom lecture and demonstration. In addition to observing the surgical procedure, Dr. Tyler dictated and performed the initial history and physical on Clayton, he signed the consent form, and he wrote the majority of the progress notes -- all under the supervision of Dr. Harkey. As Dr. Harkey argues, this is all a part of the teaching and learning process. Inasmuch as Dr. Harkey was acting in his capacity as a teacher and professor of neurosurgery, this factor weighs in favor of finding that Dr. Harkey was acting as a state employee at the time of the alleged negligence.

### The State's Interest and Involvement in Dr. Harkey's Function

¶10. Clayton argues that the State has no interest in this case because the surgery allegedly fell below the standard of care. To the contrary, the State has a keen interest in employing faculty-physicians to teach medical students as part of the State's continuing efforts to provide medical care to its citizens. The Legislature mandated that a teaching hospital, known as University Hospital, be built, equipped and operated "to serve the people of Mississippi...." Miss. Code Ann. §§ 37-115-25 &-31(2001). This Court has previously pointed out the State's interest in cases of this nature, stating:

> It is very important that faculty physicians supervise the progress of interns and residents. This provides the training necessary to ensure that Mississippi has a ready pool of competent physicians. Likewise, the resident must be able to practice medicine under the guidance of a learned physician in order to master his or her profession. The State has a strong interest in maintaining such a practical and educational environment, meeting the needs of both the physicians and the patients. Concerning the patient, UMC is fulfilling its operational purpose under Miss. Code Ann. § 37-115-31 (1996) by providing care to Washington, a Medicaid patient.

_Sullivan v. Washington_, 768 So.2d at 885 (footnote omitted).

¶11. It is unfortunate that the wrong disc was removed during the surgery. Nevertheless, the performance of disc removal surgery by a professor is part and parcel of the training contemplated by the above-referenced statute. The fact that the procedure was performed unsatisfactorily does not negate this fact.

### The Degree of Control and Direction Exercised by the State over Dr. Harkey

¶12. Clayton alleges that Dr. Harkey had a traditional doctor-patient relationship with her. Clayton further asserts that the State exercised no control over the patients that Dr. Harkey saw, when he saw them, his treatment of them or any other aspect of his practice.

¶13. Contrary to Clayton's argument, the State exercised significant control over Dr. Harkey. Dr. Harkey's practice was restricted to UMMC, and he was prohibited from earning any income from the practice of

medicine outside his contract. The State controlled the time and manner of payment of his salary. The State had the right to direct the details and manner of his work schedule. It had the right to supervise and inspect the services provided by him. It furnished the means and instruments necessary for his work and the patients for whose care he was paid his contractual salary. The State controlled the hospital premises and had the power to terminate his contract. The State, through the Department of Neurosurgery, monitored Dr. Harkey's teaching, practice and research. The fact that Dr. Harkey must use his special training and medical judgment is inconsequential. That fact alone does not necessarily make the individual an independent contractor. A certain amount of discretion is necessary for Dr. Harkey to perform his duties as a physician.

### Whether the Act Complained of Involved the Use of Judgment and Discretion

¶14. Clayton argues that the fact that Dr. Harkey was not merely supervising the actions of a resident, but was himself making the decisions, "overwhelmingly weighs in favor of independent contractor status." Yet, this Court has previously stated, while a doctor who exercises an amount of judgment and discretion in his treatment, observations and diagnosis of patients is a consideration, it is not determinative of his status. *See Sullivan v. Washington*, 768 So.2d at 885. In fact, this Court pointed out in *Sullivan* that:

> Virtually every act performed by a person involves the exercise of some discretion. Obviously, a professional necessarily retains a significant amount of discretion in the operation of his profession. This is especially true of physicians who are bound to exercise their judgment without interference from others. The Hippocratic Oath requires that the physician ". . . use [his] power to help the sick to the best of [his] ability and judgment." Section 6 of the American Medical Association's "Principles of Medical Ethics" states, "A physician should not dispose of his services under terms or conditions which tend to interfere with or impede the free and complete exercise of his medical judgment and skill . . . ."

*Id.* Thus, in accordance with this Court's decision in *Sullivan*, the fact that Dr. Harkey exercised his professional judgment and discretion through teaching and in the treatment of patients, does not mean he is an independent contractor.

### Whether Dr. Harkey Received Compensation, Either Directly or Indirectly, from Clayton

¶15. Clayton argues that Dr. Harkey received compensation indirectly, at least, because the Medicaid fees paid on her behalf go to the operation of the medical school staff. She further argues that UMMC's requirement that Dr. Harkey procure individual liability insurance is inconsistent with the notion that he is an "employee."

¶16. Nonetheless, the record reveals that Dr. Harkey was a full-time faculty member who received a fixed contractual salary, all of which was paid from funds controlled by UMMC. Dr. Harkey was not permitted to earn any income from the practice of medicine outside of his contract. Furthermore, the fact that a physician has acquired professional liability insurance is irrelevant to the inquiry as to whether a state employee enjoys immunity under the MTCA. *See **Knight v. McKee***, 781 So.2d 121, 123 (Miss. 2001).

### CONCLUSION

¶17. Considering the factors enumerated in *Miller,* the facts here weigh in favor of finding that Dr. Harkey was acting not as an independent contractor, but as a state employee at the time of the alleged negligence. Under the provisions of the MTCA, Dr. Harkey enjoys immunity in this instance. The judgment of the trial

court is affirmed.

¶18. **AFFIRMED.**

> **PITTMAN, C.J., SMITH, P.J., WALLER, COBB, DIAZ, EASLEY AND CARLSON, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

> **McRAE, PRESIDING JUSTICE, DISSENTING:**

¶19. Whether Dr. Harkey was acting as a state employee or as an independent contractor is an issue of fact for the factfinder to decide at trial, not for the trial court to dismiss on summary judgment. A genuine issue of material fact existed; and therefore, this case should be reversed and remanded for trial. For these reasons, I respectfully dissent.

¶20. Dr. Harkey performed the operation on Clayton. I find it difficult to believe that Clayton thought her body was being donated for teaching purposes. Did she consent to be the proverbial guinea pig? Just because there was a resident neurosurgeon in the operating room at the time does not mean that Dr. Harkey was acting as a teaching professor. Does the mere presence of a resident mean that one who has dual roles and may act as an independent contractor at times is automatically transformed into a state employee? There are many questions at issue which should be resolved at trial before a trial judge summarily decides that Dr. Harkey was not acting as an independent contractor.

¶21. Accordingly, I dissent.