956 So.2d 942 (2006)
W. Mark MEEKS, M.D., Appellant
v.
Sheila Fox MILLER, Peggy Fox Watz and Gary Merkell Fox, Next Friends and Sole Beneficiaries of the Intestate Estate of Merkell M. Fox, Appellees.
No. 2005-CA-00200-COA.
Court of Appeals of Mississippi.
June 27, 2006.
Rehearing Denied October 10, 2006.
*943 Paul Hobart Kimble, J. Lawson Hester, C. York Craig, Jackson, attorneys for appellant.
Barry Stuart Zirulnik, Jackson, Carlton W. Reeves, attorneys for appellees.
Before LEE, P.J., GRIFFIS and ROBERTS, JJ.
GRIFFIS, J., for the Court.
¶ 1. By virtue of an interlocutory appeal, the Mississippi Supreme Court has asked us to review the second round of Miller v. Meeks, 762 So.2d 302 (Miss.2000), a medical malpractice case.

SUMMARY OF SUPREME COURT'S EARLIER DECISION
¶ 2. In Miller, the supreme court considered a summary judgment that was granted in favor of Dr. W. Mark Meeks. Id. at 303(¶ 1). The trial court initially determined that Dr. Meeks was an employee of the University of Mississippi Medical Center ("UMMC") and that the statute of limitations had expired under the Mississippi Tort Claims Act, Mississippi Code Annotated § 11-46-1 to -23 (Supp.1999). Miller, 762 So.2d at 303(¶ 1). The supreme court determined that:
a genuine issue of material fact exists regarding whether the treatment provided by Dr. Meeks to Fox was performed in the course of his duties as an employee of UMMC rather than in his own private practice. Therefore, summary judgment in favor of Dr. Meeks on this issue was not warranted.
The specific issue to be determined is whether faculty physicians of UMMC who engage in clinical outpatient practice under the general auspices of the University, for which they are compensated, are state employees acting within the course and scope of their employment for purposes of the MTCA. This question evades ready explication. Under Miss.Code Ann. § 11-46-1(f) (Supp. 1999), if Dr. Meeks is found to be an independent contractor, he is not entitled to the protection of the MTCA. The MTCA, with a few enumerated exceptions, explicitly excludes independent contractors from its provisions. Pursuant to § 11-46-1(f), an employee is defined as follows:
"Employee" means any officer, employee or servant of the State of Mississippi or a political subdivision of the state, including elected or appointed officials and persons acting on behalf of the state or a political subdivision in any official capacity, temporarily or permanently, in the service of the state or a political subdivision whether with or without compensation. The term "employee" shall not mean a person or other legal entity while acting in the capacity of an independent contractor under contract to the state or a political subdivision; provided, however, that for purposes of the limits of liability provided for in Section 11-46-15, the term "employee" shall include physicians under contract to provide health services with the State Board of Health, the State Board of Mental Health or any county or municipal jail facility while rendering services under such contract. . . .
Miss.Code Ann. § 11-46-1(f) (Supp. 1999). Unfortunately, this definition provides little guidance on the best means for determining the employment status of Dr. Meeks.
Miller, 762 So.2d at 309-10 (¶ 18). The court then adopted five factors to be weighed to determine whether Dr. Meeks may be held liable under the Tort Claims Act:

*944 1. the nature of the function performed by the employee;
2. the extent of the state's interest and involvement in the function;
3. the degree of control and direction exercised by the state over the employee;
4. whether the act complained of involved the use of judgment and discretion;
5. whether the physician receives compensation, either directly or indirectly, from the patient for professional services rendered.
Id. at 310(¶ 20). The court then decided that the record would not allow it to review these factors, as applicable to this case. Id. at (¶ 21). The court concluded:
If Dr. Meeks is found to be acting as an independent contractor under the five-part test adopted in this opinion, he will not be shielded by the limitations on liability provided by the MTCA, or the defenses available under the MTCA. Likewise, Dr. Meeks would not benefit from the shorter one year statute of limitations provided by the MTCA. If, however, Dr. Meeks is found to be acting as a state employee, rather than as an independent contractor under the new test, he will enjoy all of the protections and defenses available under the MTCA.
Id. at 310-11(¶ 22).
¶ 3. After remand, the trial court allowed additional discovery. Then, Dr. Meeks again moved for summary judgment. Dr. Meeks asserted that he was a state employee and therefore immune. The trial judge denied the motion. Dr. Meeks filed an interlocutory appeal, which was granted by the supreme court and deflected here for review.

FACTS
¶ 4. This case originated in 1995 when Merkell Fox filed a medical malpractice suit alleging that Dr. Mark Meeks was negligent in his treatment of Fox. Fox died intestate, and the sole beneficiaries of his estate, Sheila Fox Miller, Peggy Fox Watz, and Gary Merkell Fox,[1] were substituted as parties in the lawsuit. The supreme court's original opinion contained an extensive analysis of the facts that were considered in the first summary judgment motion. We will not restate those facts here, but will discuss the relevant facts in our analysis.
¶ 5. On March 28, 2004, Dr. Meeks filed his motion to dismiss or, in the alternative for grant of summary judgment. Dr. Meeks sought dismissal, as a matter of law, based on sovereign immunity granted to him as an employee of UMMC, pursuant to Miss.Code Ann. § 11-46-1 to -23. Dr. Meeks cited Mitchell v. City of Greenville, 846 So.2d 1028, 1029(¶ 8) (Miss.2003) for the proposition that:
The Mississippi Legislature has determined that governmental entities and their employees shall be exempt from liability in certain situations as outlined in Miss.Code Ann. § 11-46-9. This exemption, like that of qualified or absolute immunity, is an entitlement not to stand trial rather than a mere defense to liability and, therefore, should be resolved at the earliest possible stage of litigation. Cf. Saucier v. Katz, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Therefore, immunity is a question of law and is a proper matter *945 for summary judgment under Miss. R. Civ. P. 56.
¶ 6. Dr. Meeks' motion relied on: the affidavit of Suzanne M. Clay, the director of business services for the UMMC Department of Medicine; the affidavit of William C. Nicholas, M.D., the director of the Division of General Internal Medicine at UMMC; Dr. Meeks deposition; and UMMC medical records of Merkell Fox. In response, the Appellees relied on the affidavits of Sheila Miller and Gary Fox, Dr. Meeks' deposition, the University Internal Medicine Associates partnership agreement dated October 1, 1991 with amendments, and the general partnership agreement for University Medicine Associates dated January 1, 1994 with the practice plan agreement attached.
¶ 7. The relevant portion of the trial judge's order denying the motion for summary judgment held:
The Court, having applied the five-part test set forth in Miller v. Meeks, 762 So.2d 302 (Miss.2000) and discussed in cases subsequent thereto, further finds that at all material times relevant to the rendition of professional medical services to M. Merkell Fox, W. Mark Meeks, M.D. acted in the capacity of a private physician engaged in private practice of medicine and as an independent contractor and not in his capacity as a State employee. Therefore, Dr. Meeks is not entitled to sovereign immunity under the Mississippi Tort Claims Act, Miss.Code Ann § 11-46-1 et seq. in effect during the occurrence of the alleged negligent acts in 1993.

STANDARD OF REVIEW
¶ 8. This Court applies a de novo standard of review to a lower court's grant or denial of summary judgment. Hudson v. Courtesy Motors, Inc., 794 So.2d 999, 1002(¶ 7) (Miss.2001). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. Russell v. Orr, 700 So.2d 619, 622(¶ 8) (Miss.1997). In the present case that requires that we view the evidence in the light most favorable, and all inferences shall be drawn in favor of the Appellees

ANALYSIS
I. Whether Dr. Mark Meeks was acting as an employee of the State of Mississippi while treating M. Merkell Fox and is thereby entitled to immunity.
¶ 9. During the period that the alleged negligence occurred, September 22, 1993, through December 13, 1993, Dr. Meeks was employed by the Board of Trustees of State Institutions of Higher Learning of the State of Mississippi (the "Board") as an Assistant Professor of Medicine at the UMMC. Dr. Meeks entered into an employment contract with UMMC in April of 1993.
¶ 10. Pursuant to his contract, Dr. Meeks was required to be a member of the University of Mississippi Clinical Associates ("UMCA") and participate in the practice plan of the Division of General Internal Medicine. Dr. Meeks membership in these associations was due to his status as a faculty member at UMMC.
¶ 11. Dr. Meeks was paid a base salary of $77,279, and he had the right to earn 100% of additional income generated through fees up to $140,000, inclusive of the base salary. Upon reaching the threshold amount of $140,000, any additional earnings were to be split evenly between Dr. Meeks and UMMC. This additional income was generated through participation in the practice plan, where he had a clinical practice and treated patients at the UMMC Pavilion.

*946 A. Application of the Miller Factors

1. The nature of the function performed by the employee.
¶ 12. The first Miller factor requires that we examine the nature of the function performed by Dr. Meeks. To summarize their positions, Dr. Meeks argues that his participation in the practice plan was required by his employment contract with UMMC and was in furtherance of his duties as a UMMC faculty member. The Appellees counter with the argument that when Dr. Meeks treated patients at the Pavilion he was acting as an independent contractor and not entitled to the protections of the Mississippi Tort Claims Act. Miss.Code Ann. § 11-46-1 to -23.
¶ 13. We begin with Dr. Meeks' argument. He claims that his treatment of Fox was in a facility provided by UMMC, on its campus. The outpatient clinics were on the grounds of UMMC to provide a patient base for eventual teaching cases following the patient's admission to the hospital. This function was a vital part of a working teaching hospital where the primary purpose is to educate future doctors in the State of Mississippi. Dr. Meeks asserts that he, and other Pavilion doctors, provide a public function by providing care to Medicare patients. Dr. Meeks also claims that the Mississippi legislature required UMMC to establish outpatient treatment programs. See Miss.Code Ann. § 37-115-25 (Rev.2001).
¶ 14. The Appellees argue that the supreme court recognized that Dr. Meeks was an employee at UMMC. What presents a material issue of fact, they contend, is that Dr. Meeks was also engaged in the private practice of medicine as an independent contractor when treating Fox. They cite Sullivan v. Washington, 768 So.2d 881 (Miss.2000). In Sullivan, Dr. George Meeks supervised an operation where the intern negligently perforated the patient's bowels, resulting in serious complications and months of hospitalization. Id. at 882 (¶¶ 3-9). The court determined that the first Miller factor favored the doctor's status as an employee because:
1. Dr. George Meeks functioned as a faculty member in a supervisory teaching capacity over surgery performed by an intern.
2. Dr. George Meeks was assigned to the operating room that day as part of his duties at UMMC.
3. Dr. George Meeks was not chosen by the plaintiff and did not have a private patient relationship with the plaintiff.
4. Dr. George Meeks served a public function by providing care for a Medicaid patient.
Id. at 884-85(¶ 18).
¶ 15. In this case, Sullivan is instructive but does not necessarily require the resolution advanced by the Appellants. Indeed, the two cases are similar because both Dr. George Meeks and Dr. Mark Meeks served a public function by providing care for a Medicaid patient.[2] The two cases are different in that Mr. Fox had a private patient relationship with Dr. Mark Meeks. Hence, our comparison to Sullivan requires that we closely consider the first two reasons that the supreme court mentioned and make sure that it is in the proper context.
¶ 16. In Sullivan, the supreme court held that Dr. George Meeks was an employee of UMMC. The court reasoned that Dr. George Meeks served as a faculty member who was involved as the supervisor to an intern who had performed surgery. *947 The court also found it important that Dr. George Meeks was assigned to the operating room that day as part of his duties at UMMC. In this case, Dr. Mark Meeks asserts that surgery and internal medicine are two distinct disciplines of medicine. The obvious definition of a surgeon is a physician who specializes in surgery. Surgery deals with the diagnosis and treatment of injury, deformity, and disease through an operation or procedure. A patient sees a surgeon because there is the need for an invasive procedure. The patient comes to the surgeon, through a referral or emergency room admission, and the surgeon determines whether a surgical procedure is medically necessary. If it is, the surgeon and the patient discuss the procedure, the risks involved and the benefits that they hope to achieve. The operation is performed at a certain time and place. A trained surgeon must obtain substantial skill in the performance of procedures and operations. Surgeons are trained with direct and individual supervision during the performance of a procedure or operation.
¶ 17. A physician who practices internal medicine, also called an internist, is a primary care physician who deals with the diagnosis and nonsurgical treatment of diseases affecting adults. The medical practice and training of an internist is different than that of a surgeon. An internist typically has a clinical practice. The patient comes to the internist because of a particular health problem or for regular medical examinations. Internists treat patients for colds, the flu, high cholesterol, organ dysfunctions, heart problems and cancer, to name a few. The care provided is not reduced to an evaluation and then a procedure or an operation. The medical issues or problems may be treated by prescription drugs, over months or years, or the internist may refer the patient to a specialist in the field necessary to provide specialized medical care to the patient.
¶ 18. We are of the opinion that the first two conclusions reached in Sullivan are not instructive here. Dr. Meeks described the treatment of Mr. Fox and the process for internists to instruct students as follows:
Q. And when you saw him [Mr. Fox] at your clinic there were no residents present when you treated him, were there?
A. I don't think there was a resident present during the clinic visits that we had together.
Q. Okay. So when you were treating him, it was not done for purposes of doingof any teaching duties at UMC.
A. Not in the clinic, you know. When patients arewe see some of our patients in the Pavilion clinic with residents and/or students and sometimes we don't. The majority of the time we don't.
That varies somewhat from department to department how muchhow many and what percent of the time patient encounters in that setting areare done with students or residents. And when those individuals they get admitted to the hospital, they usually are followed byusually, but not always are followed by medical students or house officers at that time.
. . .
Q. . . . the purpose of the Pavilion is to be self-sufficient and allow you doctors to make money over and above what you are paid as professors.
A. Yeah, I don'tI presume that the purpose of the clinic is toyou know, in a teaching hospital like that you obviously have to see patients in an *948 outpatient setting to be able to have a base of patients that are going to need hospitalization to come into the hospital to be cared for in that setting. And, I think, you know, there are probably two reasons for having a clinic like that. One is to provide the patient base of people to be admitted to the hospital for teaching programs. And the secondwell, and three things, toois just to provide care to the citizens in the area as part of the state hospital's role.
And then the third thing is to provide some supplemental income in addition to the salary as provided for those practicing physicians. . . .
¶ 19. The Appellants have offered no facts or evidence to dispute Dr. Meeks' testimony. We are of the opinion that this case is not squarely within the facts presented in Sullivan. Accordingly, we are of the opinion that this first factor, the nature of the function performed by the employee, weighs in favor of the determination that Dr. Meeks was an employee and not an independent contractor in the treatment of Mr. Fox.

2. The extent of the state's interest and involvement in the function.
¶ 20. The second Miller factor requires that we examine the extent of the state's interest and involvement in the function. To summarize their positions, Dr. Meeks argues that the State of Mississippi absolutely has an interest in the employment of its faculty members to train medical students and an important part of their employment is to teach clinical and outpatient services. The state has also mandated the operation of these clinics for the very purpose Dr. Meeks asserts here, to provide a patient base for teaching cases. The authorizing statute along with the UMMC contracts and governing documents establish the system by which Dr. Meeks was compensated. The Appellees argue that the state had no interest because the outpatient clinic was self-employment income. Further, they argue that Dr. Meeks membership in the UMCA, which runs the Pavilion under the general auspices of UMMC, does not, standing alone, make him an employee of UMMC when treating Mr. Fox.
¶ 21. UMMC was established as a teaching hospital. Section 37-115-25 of the Mississippi Code Annotated provides:
There shall be built, equipped and operated as a part of the medical school, a teaching hospital of the size of not less than three hundred fifty bed capacity, together with all ancillary buildings and physical facilities needful or proper for the establishment, operation and maintenance of such a hospital as a part of a fully accredited four-year medical school, including clinical and out patient services and all types of services deemed to be necessary or desirable as a part of the functioning of such a teaching hospital. Said teaching hospital shall be known as the University Hospital. There shall also be acquired and installed all needed equipment and supplies for the proper operation and maintenance of such medical school and hospital and other facilities for the purposes aforesaid. There shall be employed all needed personnel and services to operate said medical school and hospital and other facilities.
(emphasis added).
¶ 22. "[T]he State has a keen interest in employing faculty-physicians to teach medical students as part of the State's continuing efforts to provide medical care to its citizens." Clayton v. Harkey, 826 So.2d 1283, 1286(¶ 10) (Miss.2002). In Watts v. Tsang, 828 So.2d 785, 793(¶ 24) (Miss. 2002), the supreme court recognized that UMMC's faculty members have a mandated *949 employment plan which provides a base salary, supplemented by money received at the teaching hospital for clinical and outpatient services. "This supplemental income is administered by UMMC's medical practice plans." Id. These medical practice plans are used to bridge the salary gap, and make it possible to hire and retain highly skilled physicians to teach. Id. at 790(¶ 12). Unquestionably, the state has an interest in hiring and retaining highly skilled physicians to teach. The state had an interest in the employment of Dr. Meeks by UMMC and in the operation of the Pavilion where he provided clinical services to Mr. Fox.
¶ 23. We are of the opinion that this second factor, the extent of the state's interest and involvement in the function, weighs in favor of the determination that Dr. Meeks was an employee and not an independent contractor in the treatment of Mr. Fox.

3. The degree of control and direction exercised by the state over the employee.
¶ 24. The third Miller factor requires that we examine the degree of control and direction exercised by the state over Dr. Meeks. Dr. Meeks argues that the state exerted clear and comprehensive control over Dr. Meeks' practice at UMMC and the Pavilion. The Appellees argue that there was no control over Dr. Meeks in connection with the treatment of Mr. Fox.
¶ 25. The Constitution and Bylaws of UMCA state that "authority over the affairs of the Association (determining policy, employing personnel, adopting a budget, authorizing projects, and long-range planning) shall be exercised by the entire membership, subject to regulations of the University of Mississippi Medical Center, University, and Board of Trustees of the Institutions of Higher Learning." While being contractually required to maintain membership with the UMCA, Dr. Meeks was prohibited from practicing medicine outside his employment at UMMC. Further, he could only admit patients to UMMC and no other hospital.
¶ 26. In Owens v. Thomae, 904 So.2d 207, 211(¶ 17) (Miss.Ct.App.2005), this Court held that participation in a practice group does not change the physicians' status as an employee of UMMC. Departmental practice plans are under the management and control of the departmental chairman. The departmental chairman provides daily oversight of the practice group, and the practice groups are subject to limited oversight by UMMC's Vice Chancellor for Health Affairs and UMMC's Associate Vice Chancellor for Administrative Affairs. Id. See also Mozingo v. Scharff, 828 So.2d 1246, 1253(¶ 17) (Miss.2002).
¶ 27. In Clayton, the supreme court held that:
[T]he State exercised significant control over Dr. Harkey. Dr. Harkey's practice was restricted to UMMC, and he was prohibited from earning any income from the practice of medicine outside his contract. The State controlled the time and manner of payment of his salary. The State had the right to direct the details and manner of his work schedule. It had the right to supervise and inspect the services provided by him. It furnished the means and instruments necessary for his work and the patients for whose care he was paid his contractual salary. The State controlled the hospital premises and had the power to terminate his contract. The State, through the Department of Neurosurgery, monitored Dr. Harkey's teaching, practice and research. The fact that Dr. Harkey must use his special training and medical judgment is inconsequential. That fact alone does not necessarily make the *950 individual an independent contractor. A certain amount of discretion is necessary for Dr. Harkey to perform his duties as a physician.
Clayton, 826 So.2d at 1286(¶ 13).
¶ 28. We are of the opinion that this third factor, the degree of control and direction exercised by the state over the employee, weighs in favor of the determination that Dr. Meeks was an employee and not an independent contractor in the treatment of Mr. Fox.

4. Whether the act complained of involved the use of judgment and discretion.
¶ 29. The fourth Miller factor requires that we examine whether the act complained of involved the use of judgment and discretion. Dr. Meeks argues that the fact that a physician used his professional judgment in the treatment of patients does not mean that he was an independent contractor. The Appellees' argument is short. Their brief stated, "[w]hile not determinative of Dr. Meeks' status as an independent contractor, Dr. Meeks does not dispute this factor weighs in favor of Appellee's claim." We read Dr. Meeks' brief to argue that this factor does indeed weigh in Dr. Meeks' favor.
¶ 30. Repeatedly this Court has held that physicians exercise a significant amount of judgment and discretion in treating, diagnosing and observing their patients. Owens v. Thomae, 904 So.2d at 211(¶ 18); Mozingo, 828 So.2d at 1253(¶ 18); Sullivan, 768 So.2d at 885(¶ 22). These acts of discretion are considerations but, but are not determinative acts. Mozingo, 828 So.2d at 1253(¶ 18). As in Mozingo, the fourth Miller factor is met in this case. Id.
¶ 31. In Clayton, the supreme court rejected the notion that the fact that the physician exercises independent medical judgment and discretion in the treatment of a patient determines his status as an independent contractor. Clayton, 826 So.2d at 1286(¶ 14). The court recognized that the fact that the physician "exercised his professional judgment and discretion through teaching and in the treatment of patients, does not mean he is an independent contractor." Id. at 1287(¶ 14).
¶ 32. We are of the opinion that this fourth factor, whether the act complained of involved the use of judgment and discretion, weighs in favor of the determination that Dr. Meeks was an employee and not an independent contractor in the treatment of Mr. Fox.
5. Whether the physician receives compensation, either directly or indirectly, from the patient for professional services rendered.
¶ 33. The fifth Miller factor requires that we examine whether Dr. Meeks received compensation, either directly or indirectly, from the patient for professional services rendered. Dr. Meeks argues that he did not receive compensation for the medical care he provided Mr. Fox. The appellees argue that this is not true because he billed patients directly through his partnership, the Division of General Internal Medicine.
¶ 34. Under the terms of Dr. Meeks' employment contract his practice through the UMCA was a method of supplementing his salary as an assistant professor of medicine. The income he earned through UMCA and the practice plan was derived from fees collected. Dr. Meeks argues that he did not receive any compensation from Mr. Fox for the services rendered because the bills were sent through the Division of General Internal Medicine. The supreme court in Mozingo agreed. Mozingo, 828 So.2d at 1253 (¶¶ 19-20). There the court recognized that the receipt *951 of funds by a UMMC practice plan did not mean that all sums were retained by the doctor. His contract with UMMC required that certain amounts be shared or paid to UMMC. Id.
¶ 35. As in Mozingo, we are of the opinion that the fifth factor, whether Dr. Meeks received compensation, either directly or indirectly, from the patient for professional services rendered, weighs in favor of the determination that Dr. Meeks was an employee and not an independent contractor in the treatment of Mr. Fox
B. Conclusion based on analysis of Miller factors.
¶ 36. After having weighed and applied all five Miller factors, we conclude that each factor weighs in favor of Dr. Meeks. Because we find that Dr. Meeks was an employee of UMMC and as a result a state employee, we hold that the trial court erred when it denied Dr. Meeks' summary judgment. As an employee of UMMC, Dr. Meeks is immune from liability.
II. Whether the Division of General Internal Medicine is an instrumentality of the State of Mississippi.
III. Whether the Mississippi Legislature has clarified its intention as to the definition of employee in Mississippi Code Annotated section 11-46-1
¶ 37. Having determined that Dr. Meeks is a state employee, we do not address issues identified as II and III and consider these issues as moot.

CONCLUSION
¶ 38. We find that Dr. Meeks acted as employee of the State of Mississippi when he treated Merkell Fox. Therefore, Dr. Meeks is entitled to immunity as provided in the Mississippi Tort Claims Act. Accordingly, we reverse and render the decision of the Hinds County Circuit Court and grant judgment in favor or Dr. Meeks dismissing the claims of the Appellees.
¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
NOTES
[1] Although we prefer not to use such term, we refer to Mr. Fox's beneficiaries as the "Appellees".
[2] According to the affidavit of Sheila Miller, Mr. Fox's medical bills were paid by a combination of Medicare and other private supplemental health insurance through AFLAC.