944 So.2d 107 (2006)
James A. BARKSDALE, Individually and on Behalf of the Wrongful Death Beneficiaries of Lisa Renee Barksdale, Deceased, Appellant,
v.
David CARROLL, M.D., Appellee.
No. 2004-CA-01859-COA.
Court of Appeals of Mississippi.
August 29, 2006.
Certiorari Denied December 7, 2006.
*109 Alben N. Hopkins, Gulfport, attorney for appellant.
R. Mark Hodges, Jackson, attorney for appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
CHANDLER, J., for the Court.
¶ 1. The appellant's motion for rehearing is denied. The original opinion issued in this case is withdrawn, and the following opinion is substituted therefor.
¶ 2. On February 26, 2000, Lisa Renee Barksdale was involved in an automobile accident and was taken to the University of Mississippi Medical Center (UMMC). Lisa Barksdale received treatment and was admitted for observation. On February 27, 2000, she died. Lisa Barksdale's husband, James A. Barksdale, brought suit individually and on behalf of the wrongful death beneficiaries against UMMC and numerous physicians. Barksdale settled with UMMC under the Mississippi Torts Claims Act (MTCA).
¶ 3. This action arises out of a second amended complaint against Dr. David Carroll which alleged causes of action for malpractice, negligence and medical negligence, res ipsa loquitur, and failure to obtain informed consent. Dr. Carroll filed a motion for summary judgment arguing that he was an employee of the state and, therefore, should be immune from liability under the MTCA. On July 16, 2004, the trial court granted summary judgment in favor of Dr. Carroll. Barksdale appeals.
¶ 4. Finding no error, we affirm.

FACTS
¶ 5. In 1998, Dr. Carroll and his wife, Dr. Gina Heath, relocated to Mississippi and formed their own private practice, Surgical Specialists of Jackson. In the course of Dr. Carroll's relocation, the Department of Surgery at UMMC asked him to serve as an attending faculty member. Soon thereafter, UMMC replaced the person serving as chairman of the Department of Surgery. Consequently, the administration asked Dr. Carroll if he would temporarily serve in his faculty role without compensation until the new chairman established policies and procedures for the faculty members. Dr. Carroll agreed to temporarily serve without compensation because he received income from his separate private practice outside of UMMC.
¶ 6. On January 19, 1999, UMMC appointed Dr. Carroll effective February 18, 1999, as a Clinical Assistant Professor of Surgery. The position was non-salaried. On May 10, 1999, the Board approved Dr. Carroll's appointment as a non-salaried faculty member with the title of Clinical Assistant Professor of Surgery and Attending Physician. On February 10, 2000, UMMC appointed Dr. Carroll effective March 31, 2000, as a Clinical Assistant *110 Professor of Surgery and Attending Physician. This was a part-time salaried position. When Dr. Carroll became a salaried faculty member, he became a member of the departmental practice plan. Prior to that time, Dr. Carroll was not a member of the departmental practice plan.
¶ 7. Although Dr. Carroll's title changed during his time as a non-salaried faculty member, he maintained the same faculty member duties. Dr. Carroll's role as a faculty member involved occasional lectures to the residents as well as faculty consultation. The duty of faculty consultation required Dr. Carroll occasionally to be on call to consult with the residents on duty who provided care to the patients of UMMC. During the time that Dr. Carroll was on call, he acted as an attending physician and could not be on call at any other hospital. Every patient at UMMC is assigned an attending physician if the patient is seen by the Department of Surgery. The attending physician must be a member of the faculty at UMMC. Dr. Carroll did not bill patients or receive any compensation for faculty consultation. Thus, on February 26, 2000, Dr. Carroll both had a private practice and served as an uncompensated faculty member at UMMC with the title of Clinical Assistant Professor of Surgery and Attending Physician. He was not a member of a departmental practice plan.
¶ 8. On the evening of February 26, 2000, Dr. Carroll was on call as the attending physician of the Surgical Residency Program. Dr. Saied Habibipour, a senior surgical resident and a licensed medical doctor, was informed that Lisa Barksdale was en route to UMMC for injuries she had sustained in an automobile accident. Dr. Habibipour phoned Dr. Carroll at his home and told Dr. Carroll that a potentially critical patient was en route to the hospital. As Dr. Carroll was preparing to leave for the hospital, Dr. Habibipour called him again to communicate that he did not need to come to the hospital. Dr. Habibipour informed Dr. Carroll that the patient was stable and that further tests were being performed. Dr. Carroll concurred with Dr. Habibipour's diagnosis. Dr. Habibipour called Dr. Carroll later that evening to discuss the test results. The results showed no internal injuries or other abnormalities. Dr. Carroll concurred with Dr. Habibipour's plan to admit Lisa Barksdale for a twenty-three hour observation period. Dr. Carroll did not hear any further information until the next day, when he was no longer on call. Another resident called Dr. Carroll and informed him that Lisa Barksdale had died as a result of lacerations of the liver and of the mesentery and hemoperitoneum.
¶ 9. Dr. Carroll never went to the hospital to treat Lisa Barksdale. He did not personally review her medical chart or any of her medical tests. Dr. Carroll did not bill Lisa Barksdale for any services because he never personally treated her. Had Dr. Carroll performed services for Lisa Barksdale, he would have billed through his office and not through the departmental practice plan.

STANDARD OF REVIEW
¶ 10. "A grant of summary judgment is reviewed de novo." Conley v. Warren, 797 So.2d 881, 882 (Miss.2001). There must exist no genuine issues of material fact, and the moving party must be entitled to judgment as a matter of law. M.R.C.P. 56(c). The party requesting summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. Short v. Columbus Rubber & Gasket Co., 535 So.2d 61, 63-64 (Miss. 1988). The trial court's grant of summary judgment will be reversed if any genuine triable issues of fact exist. Brown v. Credit *111 Ctr., Inc., 444 So.2d 358, 362 (Miss.1983). Otherwise, the decision will be affirmed. Id.

LAW AND ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN IT FOUND THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AS TO THE EMPLOYMENT STATUS OF DR. DAVID CARROLL.
¶ 11. The MTCA "provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit." L.W. v. McComb Separate Mun. Sch. Dist., 754 So.2d 1136, 1138(¶ 11) (Miss.1999); Miss. Code Ann. § 11-46-7(1) (Rev.2002). "Any tort claim filed against a government entity or its employee shall be brought only under the MTCA." Id. "The MTCA waives sovereign immunity from claims for money damages arising out of the torts of governmental entities and their employees." Id. Additionally, "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Miss.Code Ann. § 11-46-7(2) (Rev.2002). This Court must determine whether, on the evening of February 26, 2000, Dr. Carroll was acting as an employee or as an independent contractor. The employee/independent contractor distinction is vital because, as an employee, Dr. Carroll would enjoy the immunity afforded by the MTCA in his individual capacity, but as an independent contractor, he would not. Watts v. Tsang, 828 So.2d 785, 791(¶ 18) (Miss.2002).
¶ 12. Barksdale argues that Dr. Carroll was an independent contractor and could be sued in his individual capacity. Barksdale argues that Dr. Carroll was not an employee because Dr. Carroll did not receive compensation from UMMC and was not a member of a departmental practice plan. We disagree. Mississippi Code Annotated section 11-46-1(f) (Rev.2002) provides, in pertinent part, that an employee is "any officer, employee or servant of the State of Mississippi or a political subdivision of the state, including elected or appointed officials and persons acting on behalf of the state or a political subdivision in any official capacity, temporarily or permanently, in the service of the state or a political subdivision whether with or without compensation." Under the plain language of the statute, compensation is not a necessary component of employee status.
¶ 13. Further, a physician's participation or non-participation in a departmental practice plan is not fully dispositive of the physician's employment status. Neither section 11-46-1(f) nor our precedent applying the statute has required a physician to be a member of a departmental practice plan in order to be considered a state employee. A holding that a physician must be a member of a departmental practice plan in order to be considered a state employee would be inconsistent with the statute's inclusion of uncompensated officers, employees, or servants of the state in the statutory definition of employee. "Medical practice plans are organized groups of physicians with medical school faculty appointments who, in addition to research and medical education responsibilities, provide patient care services to both insured and uninsured patients." Mozingo v. Scharf, 828 So.2d 1246, 1254(¶ 23) (Miss.2002). In Mozingo, the court stated that the departmental practice plans are "created to facilitate billing and collection of physician fees." Id. The supreme court has stated that "[t]he Board of Trustees, which has authority over this state's teaching hospital, has mandated an *112 employment plan for its faculty which includes a base salary, supplemented by money received at the teaching hospital for clinical and outpatient services." Watts, 828 So.2d at 793(¶ 24). "The supplemental income is administered by UMMC's medical practice plans." Id. This authority indicates that the departmental practice plans are mechanisms for billing and collecting physician fees. An uncompensated physician like Dr. Carroll would have no reason to be a member of a departmental practice plan. Section 11-46-1(f) specifically includes uncompensated officers, employees, or servants of the state in the definition of employee. Therefore, we find that membership in a departmental practice plan is not required for a UMMC physician to have state employee status under section 11-46-1(f).
¶ 14. We briefly address Barksdale's argument that the amended version of section 11-46-1(f) applies to the instant case. Mississippi Code Annotated section 11-46-1(f) was amended in 2002. The 2002 amendment left the prior statutory language intact, but added to the definition of employee. The new language states, "[t]he term employee shall also include any physician, dentist or other health care practitioner employed by the University of Mississippi Medical Center (UMMC) and its departmental practice plans who is a faculty member and provides health care services only for patients at UMMC or its affiliated practice sites." Barksdale contends that, because the amended statute specifically includes as state employees those UMMC physicians who are members of the departmental practice plans (among other requirements), the statute necessarily excludes from employee status any physician who is not a member of the departmental practice plans.
¶ 15. Barksdale did not raise this argument before the trial court. The alleged negligence at issue in this case occurred on February 26, 2000. This action was commenced on December 20, 2000. The 2002 amendment was effective from and after January 1, 2003. Miss.Code Ann. § 11-46-1(f) (Supp.2005). Barksdale's authorities for the retroactive application of the amended statute are cases standing for the proposition that, when a statutory amendment affects only the mode of procedure, and not the substantive rights of the parties, it will be applied retroactively in pending cases. City of Clarksdale v. Miss. Power and Light Co., 556 So.2d 1056, 1057 (Miss.1990). As illustrated by Barksdale's own argument, the amended section 11-46-1(f) does not prescribe a new mode of procedure, but functions substantively. We find that the law applicable to this case was the prior version of section 11-46-1(f). Therefore, we do not reach the merits of Barksdale's argument requesting our interpretation of the amended statute.
¶ 16. Having found that neither compensation nor membership in a departmental practice plan is a requisite for a UMMC physician to be a state employee under section 11-46-1(f), we proceed to determine whether Dr. Carroll was a state employee or an independent contractor at the time of the alleged negligence. This Court has applied the five-factor balancing test from Miller v. Meeks, 762 So.2d 302 (Miss.2000), to determine employment status in cases where the UMMC physician was not indisputably a state employee. Watts, 828 So.2d at 797(¶ 42) (citing Knight v. McKee, 781 So.2d 121, 122 (Miss. 2001)). In Knight, the supreme court found it unnecessary to apply the Miller test because it was indisputable that two UMMC faculty physicians were not independent contractors. Knight, 781 So.2d at 123(¶ 5). This was because they received no income for the practice of medicine from sources other than their faculty appointments *113 at UMMC. In other words, it was readily apparent from the physicians' exclusive employment as UMMC faculty members that each physician did not "wear two hats," one as an employee of UMMC and one as a physician engaged in a separate private practice. See Brown v. Warren, 858 So.2d 168, 173(¶ 13) (Miss.Ct. App.2003).
¶ 17. In the instant case, Dr. Carroll was working for UMMC without compensation on a part-time basis and also received income from his private practice. Therefore, we apply the Miller factors to determine Dr. Carroll's status. We find that the factors strongly weigh in favor of Dr. Carroll's status as a state employee. Therefore, we find that Dr. Carroll was personally immune from suit for his acts or omissions concerning Lisa Barksdale's death.
¶ 18. The Miller factors include: (1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; (4) whether the act complained of involved the use of judgment or discretion; and (5) whether the physician received compensation, either directly or indirectly, from the patient for the professional services rendered. Miller, 762 So.2d at 310(¶ 20).
1. The nature of the function performed by the employee
¶ 19. In Sullivan v. Washington, 768 So.2d 881, 884-85 (Miss.2000), the supreme court held that an attending physician who supervised a tubal ligation performed by UMMC residents was a state employee. The patient did not choose the physician; rather, the physician was assigned to the patient as part of the physician's duties as a UMMC faculty member. The court found that the physician "was acting in his capacity as a supervisor and did not have a private relationship with the patient." Id. at 884-85(¶ 18). In Corey v. Skelton, 834 So.2d 681, 685(¶ 10) (Miss.2003), the court found that an on-call, attending physician's role was "to supervise the overall care of Lewis and all other admitted patients and to teach and advise the residents and interns." In both cases, the nature of the function factor weighed in favor of employee status.
¶ 20. Likewise, in this case, Dr. Carroll acted in a supervisory role regarding Dr. Habibipour's treatment of Lisa Barksdale. Dr. Carroll was contacted by Dr. Habibipour to provide consultation for Lisa Barksdale's condition. Dr. Carroll was the attending physician the night that Lisa Barksdale was admitted to UMMC. Dr. Carroll did not choose his patients or the residents that he supervised. Dr. Carroll did not have a private patient relationship with Lisa Barksdale. Rather, Dr. Carroll, in his role as a UMMC faculty member and attending physician, supervised and consulted with Dr. Habibipour. Dr. Carroll's function in Barksdale's care in no way involved his private medical practice. We find that this factor weighs in favor of Dr. Carroll's status as a state employee.
2. The extent of the state's interest and involvement in the function
¶ 21. Concerning the attending faculty physician in Corey, the court stated:
The role of the faculty physician is to supervise the progress of residents and interns, provide the necessary training and to maintain a practical and educational environment. This Court has held that the state has a compelling interest in maintaining such an educational environment provided by Dr. Skelton and all its teaching physicians.
*114 Id. at 685(¶ 11) (citing Sullivan, 768 So.2d at 885). In Sullivan, the court emphasized the importance of residents receiving training from faculty physicians in order to master their profession. Sullivan, 768 So.2d at 885(¶ 19). "The State has a strong interest in maintaining such a practical and educational environment, meeting the needs of both the physicians and the patients." Id.
¶ 22. We find that the State had a strong interest and involvement in Dr. Carroll's function as an attending faculty physician.
3. The degree of control and direction exercised by the state over the employee
¶ 23. The fact that "[t]he State had the right to direct the details and manner of [the physician's] work schedule" is indicative of the physician's employee status. Clayton v. Harkey, 826 So.2d 1283, 1286(¶ 13) (Miss.2002). UMMC mandates the schedules of the faculty physicians who are on call. Dr. Carroll was a faculty physician assigned to be on call the night that Lisa Barksdale was admitted to UMMC. UMMC required Dr. Carroll to provide supervisory instruction to the surgical residents that night. And, Dr. Carroll did not choose Lisa Barksdale as a patient, but was assigned to supervise Dr. Habibipour's treatment of Lisa Barksdale as part of his job as attending physician. See Mozingo, 828 So.2d at 1252(¶ 17). Nor could Dr. Carroll "choose or limit the doctors with whom he worked." Id. And, UMMC did not allow Dr. Carroll to be on call with any other hospitals while he was on call with UMMC. For these reasons, we find that UMMC exercised significant control and direction over Dr. Carroll on February 26, 2000.
4. Whether the act complained of involved the use of judgment and discretion
¶ 24. The use of judgment or discretion, alone, is not determinative of employee status. Corey, 834 So.2d at 685(¶ 13). "Obviously a professional necessarily retains a significant amount of discretion in the operation of his profession." Sullivan, 768 So.2d at 885(¶ 22). "This is especially true of physicians who are bound to exercise their judgment without interference from others." Id. The Sullivan court held that the attending physician's supervisory acts involved little judgment or discretion. Id. The court found that the attending physician had "played a very small role in [the patient's] surgery, diagnosis and treatment." Id.
¶ 25. Like the physician in Sullivan, Dr. Carroll played a small role with regard to Lisa Barksdale. Dr. Habibipour called Dr. Carroll to discuss Lisa Barksdale's condition twice during the evening of February 26, 2000. Dr. Habibipour gave Dr. Carroll his diagnosis and the results of the tests. Dr. Carroll reviewed Dr. Habibipour's suggestions and concurred that Lisa Barksdale should be put on twenty-three hour observation. The two telephone conversations were within Dr. Carroll's supervisory capacity and involved little judgment or discretion. Therefore, this factor weighs in favor of Dr. Carroll's status as a state employee.
5. Whether the physician receives compensation, either directly or indirectly, from the patient or for professional services rendered
¶ 26. Dr. Carroll did not bill Lisa Barksdale or receive any compensation from Lisa Barksdale for professional services *115 rendered. When Dr. Carroll treated Lisa Barksdale, he was acting as an uncompensated faculty member of UMMC. Barksdale points out that Dr. Carroll would have billed Lisa Barksdale from his private practice if he had gone to the hospital and performed a procedure on Lisa Barksdale. Dr. Carroll was not a member of a departmental practice plan and would not have billed Lisa Barksdale through such a plan.
¶ 27. Under the specific facts presented, we find that this factor does not weigh in favor of independent contractor status. While Dr. Carroll would have billed Lisa Barksdale privately had he rendered any treatment to her, that is not what occurred in this case. In this case, Dr. Carroll assumed a supervisory role in Lisa Barksdale's care entirely without remuneration. That supervisory role was part of his job as an uncompensated faculty member of UMMC.
¶ 28. After weighing the Miller factors, we find that Dr. Carroll was acting as an employee of UMMC and not as an independent contractor during his consultation in the treatment of Lisa Barksdale.

CONCLUSION
¶ 29. After a review of Mississippi Code Annotated section 11-46-1(f) and the Miller factors, this Court finds that Dr. Carroll was an employee of UMMC and the state for the purposes of liability under the MTCA. The summary judgment granted by the trial court is affirmed.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.